[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
By application dated February 1, 1995, Harold G. Michel ("Michel") applied to the Bethany Planning and Zoning Commission ("Commission") for a special exception, pursuant to Section 4.2 of the Bethany Zoning Regulations to permit the development of five "rear lots" located to the rear of Michel's home on Wooding Hill Road. Lots 1, 2 and 3 were proposed to be accessed by a common driveway off Wooding Hill Road, and Lots 4 and 5 were proposed to be accessed by a common driveway off Bethany Mountain Road.
At the same time Michel filed a subdivision application pursuant to § 8 of the Bethany Subdivision Regulations for approval of a five-lot subdivision.
A joint public hearing was scheduled by the Commission to consider the request for the special exception and the request for subdivision approval.
The Commission gave the following reasons for its action in denying the special exception:
"REASONS FOR DENIAL [of special exception]
 1.) Section 4.2 of the Bethany Zoning Regulations requires the Commission shall find that the public convenience and welfare will be served by the proposed use, and that the proposed use at the proposed location (subject to such appropriate conditions and safeguards in the interest of the public convenience and welfare as the Commission may impose) will not substantially impair health, safety or welfare of an inhabitants and owners of nearby properties, particularly with respect to: . . . drainage, . . . flooding, fire, . . . and traffic. . . ."
The Commission went on to find with respect to Lots 4 and 5 that there would be significant public safety and emergency access concerns because of the excessive length and steepness of the access way. With respect to Lots 1, 2 and 3 the Commission CT Page 4095-BB found that there would be an increase in the quantity of water that will run onto the adjacent properties of Michel and Spence. The Commission further found that the increased runoff must be considered due to the small size of the wetlands on the Michel property and that the wetland area has no retention capacity due to the topography of the sloping hillside.
The Commission gave the following reasons for denial of the subdivision application:
 "1.) Pursuant to Section 10, the special exception permit application for the five lots in the proposed subdivision which are all proposed as rear lots, was denied by appropriate Commission action.
 2.) Section 4.2.6 of the Bethany Subdivision Regulations does not deem an application complete unless `drainage or other easements' are provided. This application does not contain any drainage easements for the resulting increased flow onto the adjoining Michel and Spence properties, nor do the site development maps show existing and proposed easements and rights of way, as required by Section 5.4.b. Further, the application does not contain the proposed `form' of easements, . . . required to be submitted per section 5.6 of the Subdivision Regulations.
 3.) Provisions for drainage has not been properly or adequately made in violation of Section 11 of the Bethany Subdivision Regulations."
AGGRIEVEMENT
Although the plaintiff did not have a witness present at the trial of the matter to prove aggrievement, the court, over the objection of the town, allowed the submission of post-hearing evidence which was sufficient to show that Michel was the owner of the affected property on the day of the application and continuously up to and including the day of the hearing. Accordingly, the court finds the applicant to be statutorily aggrieved.
DISCUSSION
The Commission first denied the application for a special exception and then denied the application for subdivision. It CT Page 4095-CC does not appear to be seriously contested that the special exception was necessary for the approval of "rear lots". Neither does there appear to be any argument concerning the fact that the five lots in question are "rear lots" within the meaning of the Bethany Regulations. Accordingly, if the Commission's action in denying the special exception is supported, there would appear to be no grounds to argue that the denial of the subdivision itself was inappropriate.
The record reveals that Michel obtained Wetlands Permit #554 on December 19, 1994 from the Bethany Inland Wetlands Commission. That permit was submitted to the Planning and Zoning Commission at the April 15, 1995 public hearing in this matter. The original wetlands permit proposed that drainage would travel down the driveway of Lots 1, 2 and 3 into a catch basin on Wooding Hill Road. Because the Planning and Zoning Commission expressed concern that the diversion of runoff into the catch basin would overburden an easement for drainage at the outflow from the town storm drain system, the applicant revised his plans for drainage and proposed channelling the drainage into existent intermittent watercourses and wetlands on adjacent property.
Section 8-26 of the Conn. General Statutes provides:
 "If [a subdivision] application involves land regulated as an inland wetland or watercourse under the provisions of chapter of 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed with the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission
In the instant case the applicant made a proper application to the inland wetlands agency. That application was granted. The applicant then approached the Planning and Zoning Commission which expressed concerns about overburdening an outfall easement and refused to allow the runoff to be handled in the manner suggested by the applicant and approved by the Wetlands Commission. The applicant then proposed an alternative plan which was never submitted to the Inland Wetlands Agency. Because Michel never submitted his revised wetlands plan to the Inland Wetlands Agency, it would be a violation of both section 8-3(c) [as to the special exception] and 8-26 [as to the subdivision] for the Commission to have approved the subdivision or the special CT Page 4095-DD exception prior to receiving Inland Wetland Agency action. The appellant argued at trial that the Commission should not have accepted the revised wetlands plan but instead proceeded in accordance with the original plan. However, the appellant voluntarily withdrew his approved plan and the agency had no choice.
Michel argues that the Commission erred in not giving "due consideration" to the final Wetlands Commission report as required by the statutes. The Commission did give due consideration to the wetlands" report as set forth in Wetlands Permit #554. However, the Commission had no final report on Michel's modified plan. Michel failed to file the revised plan with the wetlands commission which would have generated such a report. The burden was on Michel to file the revised plan with the Commission Conn. General Statutes § 8-3c(a) and § 8-26
See also County Wide Home Improvement and Maintenance Co. Inc.v. Planning and Zoning Commission, 8 Conn. Super Ct. Rpts. 379
(Conn.Super.Ct. 1993), and Greene v. Richfield Planning andZoning Commission, 8 Conn. L. Reptr. 137 (Conn.Super.Ct. 1993).
With regard to the rear lots, the Commission could approve these lots only upon a finding of public convenience and necessity. The Board of Selectmen, which reviews and approves private driveways, recommended that the Commission reject the subdivision driveways because they are "too long and too steep" Record-III B.2, p. 1. The record indicates the length of the driveway from Wooding Hill Road to the proposed house on Lot 1 is 850 feet; to the proposed house on Lot 2, 1100 feet; and to the proposed house on Lot 3, 1160 feet. The length of the driveway from Bethany Mountain Road to the proposed house on Lot 4 is 1100 feet, and to the proposed on Lot 5, 1070 feet.
Even after the driveways were regraded to make them less steep, consulting engineer Robert Mansfield reported as follows:
 "While the average grade of the driveways does not exceed 12%, it is considerably steeper than that in several places The driveway to lots 1, 2, and 3 has 250' of 15% grade and 180'± at 14% grade. The driveways to lots 4 and 5 has 455'± stretch at 16% grade. Regardless of what the fire department says, these grades will be very difficult to negotiate, especially during the winter months."
Record-II.R., p. 1. Mr. Mansfield continued, "Both driveways CT Page 4095-EE are on the north side of the hill and will receive little sunlight during the winter months. Thus, there will be little or no melting of snow or ice on the driveways." Record-III.B.2, p. 1.
The South Central Regional Council of Governments commented that: "The proposed combined driveways . . . posed public safety concerns due to the excessive length and steep gradient." Record-III.A.14
The Commission had ample advice and comment from its several consultants from which it could conclude that "public convenience and welfare" would not be served and that the public health and welfare will be "substantially adversely affected."
The Commission's denial of the subdivision application is supported by the record. The Commission's denial of the special exception is supported by the record. The application did not comply with the subdivision regulations and the Commission did not abuse its discretion in refusing to grant the requested special exception.
For all of the foregoing reasons, the appeal is dismissed.
BY THE COURT
BY: KEVIN E. BOOTH, JUDGE